# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>LONNIE TENNANT,<br><br>                        Petitioner. | No. 53418-5-II<br><br>UNPUBLISHED OPINION |

GLASGOW, J.—In 2002, Lonnie Tennant was convicted of second degree rape of a child, second degree child molestation, and second degree rape for crimes he committed in 2001. The trial court sentenced Tennant to life without the possibility of release under RCW 9.94A.570, the Persistent Offender Accountability Act (POAA). The trial court's sentence was based on its finding that Tennant had two prior strike offenses, including a 1982 Missouri conviction for second degree assault.

Tennant's current personal restraint petition (PRP) was filed more than one year after his sentence became final, but he argues that *State v. Webb*, 183 Wn. App. 242, 247-49, 333 P.3d 470 (2014), was a significant change in the law that exempts his PRP from the statutory time bar. He contends that by applying *Webb*, his 1982 Missouri conviction does not count as a strike offense under the POAA and that he should be resentenced. Without reaching the merits, we dismiss Tennant's PRP as untimely because *Webb* was not a significant change in the law.

FACTS

In 1982, Tennant pleaded guilty to second degree assault in Missouri. *State v. Tennant*, noted at 119 Wn. App. 1038, 2003 WL 22890423, at *3, *7. In 1982, to convict a person of second degree assault under the applicable Missouri statute, the State had to prove that the defendant "knowingly caus[ed] or attempt[ed] to cause physical injury to another person by means of a deadly weapon or dangerous instrument." Former MO. REV. ST. 565.060(1) (1978).

In 1982, to convict a person of second degree assault under the equivalent Washington statute, the State was required, as relevant to this case, to prove that the defendant "knowingly inflict[ed] grievous bodily harm upon another with or without a weapon" or "knowingly assault[ed] another with a weapon or other instrument or thing likely to produce bodily harm." Former RCW 9A.36.020(b), (c) (1979), *repealed by* LAWS OF 1986, ch. 257, § 9, eff. July 1, 1988, LAWS OF 1987, ch. 324, § 3.

By 1988, the Washington legislature had amended the second degree assault statute such that a defendant could be convicted of second degree assault if the State proved that they "[i]ntentionally assault[ed] another and thereby recklessly inflict[ed] substantial bodily harm," or "[a]ssault[ed] another with a deadly weapon." RCW 9A.36.021(a), (c).[1]

In 1990, Tennant was convicted of first degree burglary in Washington. *Tennant*, 2003 WL 22890423, at *3. Nothing about this conviction is currently in dispute.

---

[1] The relevant substance of this provision has remained unchanged since the 1988 amendments, so we cite to the current version of the statute. *See* former RCW 9A.36.021 (1988).

No. 53418-5-II

In 1994, the POAA went into effect. LAWS OF 1994, ch. 1, §§ 1-3; RCW 9.94A.570. Second degree assault was designated a most serious offense, making it a strike offense for purposes of POAA sentencing. RCW 9.94A.030(33)(b).[2]

In November 2001, Tennant committed the offenses for which he was convicted and sentenced to life in prison without the possibility of release.

In 2002, Tennant filed a timely appeal in this court. Tennant argued that his 1982 assault charge should not have been deemed a strike offense for purposes of sentencing him as a persistent offender. He argued that "under Missouri law, the charge involved conduct that did not constitute second degree assault under Washington law." *Tennant*, 2003 WL 22890423, at *3. We affirmed Tennant's judgment and sentence in an unpublished opinion, holding that Tennant's prior Missouri conviction was comparable to Washington's definition of "second degree assault" in 1982, and thus it was properly included in his offender score. Although Washington's definition of "second degree assault" changed between 1982 and 2001, we did not consider whether the 1982 definition of "second degree assault" in Washington or Missouri would still have constituted a most serious offense in Washington in 2001.[3]

In 2014, we decided *Webb*, concluding that a 1982 Washington conviction for second degree assault was not a most serious offense for purposes of sentencing the defendant as a persistent offender in 2010. 183 Wn. App. at 249. We held that the 1982 and 2010 statutory

---

[2] In 2001, this provision was codified as RCW 9.94A.030(28)(b) (2001). Because the relevant substance has not changed, we cite to the current statute.

[3] Tennant's petition for review of this court's decision was denied. *State v. Tennant*, 151 Wn.2d 1038, 95 P.3d 351 (2004).

definitions of "second degree assault" were not legally comparable and there was insufficient proof that Webb's conduct was factually comparable. *Id.* at 248-49.

Tennant filed this PRP in 2019, arguing that *Webb* was a significant change in the law material to whether his 1982 Missouri conviction was properly counted as a strike under the POAA.

ANALYSIS

A.    PRP Time Bar

A petitioner may request relief through a PRP when the petitioner is under unlawful restraint. RAP 16.4(a)-(c). Under RCW 10.73.090(1), a PRP may not be filed more than one year after the judgment and sentence becomes final, so long as the judgment and sentence is valid on its face and was imposed by a court of competent jurisdiction. The date of final judgment includes the "date that an appellate court issues its mandate disposing of a timely direct appeal." RCW 10.73.090(3)(b).

The one year time bar does not apply, however, if one of the six statutory exemptions in RCW 10.73.100 applies to the petitioner's judgment and sentence. Under RCW 10.73.100(6), the one year time limit under RCW 10.73.090 does not bar a PRP if "[t]here has been a significant change in the law, whether substantive or procedural, which is material to the . . . sentence." This exemption applies if "(1) there has been a 'significant change in the law,' (2) the change is 'material to the [defendant's] sentence,' and (3) 'sufficient reasons exist to require retroactive application.'" *In re Pers. Restraint of Marshall*, 10 Wn. App. 2d 626, 632, 455 P.3d 1163 (2019) (quoting RCW 10.73.100(6)).

A significant change in the law occurs "'when an intervening appellate decision overturns a prior appellate decision that was determinative of a material issue.'" *Id*. at 636 (quoting *State v. Miller*, 185 Wn.2d 111, 114, 371 P.3d 528 (2016)). But if a decision "merely settles a point of law without overturning prior precedent, applies settled law to new facts, or addresses an issue for the first time," it is not a significant change in the law. *Id.*

An opinion need not expressly overrule prior precedent to be a significant change in the law. *Id.* at 637. "One test for determining whether a significant change has occurred is to identify whether the defendant previously could have argued the same issue." *Id.* This test reflects the principle that "litigants have a duty to raise *available* arguments in a timely fashion," but "they should not be faulted for [omitting] arguments that were essentially *unavailable* at the time." *In re Pers. Restraint of Greening*, 141 Wn.2d 687, 697, 9 P.3d 206 (2000).

Tennant filed this PRP more than one year after his judgment and sentence became final, but he argues that *Webb* was a significant change in the law and that his PRP is exempt from the time bar under RCW 10.73.100(6). We disagree.

B.     Significant Change in the Law

    1.     POAA sentencing

To be sentenced as a persistent offender, a person must have been (1) "previously convicted on at least two separate occasions, (2) in this state or elsewhere, (3) of felonies that, under the laws of this state, would be considered most serious offenses [as defined in RCW 9.94A.030(33)], and

(4) would be included in the offender score under RCW 9.94A.[525.]" *State v. Morley,* 134 Wn.2d 588, 603, 952 P.2d 167 (1998); *see also* RCW 9.94A.030(38)(a)(i)-(ii).[4]

In Tennant's direct appeal, we held that his 1982 Missouri assault conviction was properly included in his offender score. *Tennant*, 2003 WL 22890423, at \*8. But to properly include the assault conviction as a strike offense for POAA sentencing, the prior conviction must also have been a most serious offense under RCW 9.94A.030(33). In this context, the relevant comparison is to offenses that constituted most serious offenses when the defendant committed the offense for which he is currently being sentenced. *See State v. Varga*, 151 Wn.2d 179, 191, 86 P.3d 139 (2004) ("We have repeatedly held that sentencing courts must 'look to the statute in effect at the time [the defendant] committed the [current] crimes' when determining defendants' sentences." (alterations in original) (quoting *State v. Delgado*, 148 Wn.2d 723, 726, 63 P.3d 792 (2003))).

To the extent the State argues that Washington courts are required only to compare out-of-state and in-state offenses at the time the prior out-of-state offense was committed, this is true when the issue is whether a prior out-of-state conviction may be included in the defendant's offender score. *See, e.g.*, *In re Pers. Restraint of Canha*, 189 Wn.2d 359, 367-68, 402 P.3d 266 (2017) (assessing whether a prior out-of-state conviction was properly included in the offender score in a case that did not involve the POAA). But as discussed in more detail below, under the plain language of RCW 9.94A.030(38)(a)(ii) and *Morley,* 134 Wn.2d at 602-03, the State must

---

[4] Felonies committed before December 2, 1993, when the POAA became effective, can be considered most serious offenses, but only if they are comparable to a most serious offense. RCW 9.94A.030(33)(t). Under RCW 9.94A.525(3), out-of-state convictions are "classified according to the comparable offense definitions and sentences provided by Washington law."

also show the defendant has been convicted of two prior felonies that, under the laws of this state, would be considered most serious offenses.

To compare an out-of-state offense for offender score and most serious offense purposes, courts assess first "whether the foreign offense is legally comparable" to the parallel in-state offense. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007); *Webb*, 183 Wn. App. at 247-48. If there is no legal comparability, the "court must then determine whether the offense is factually comparable." *Thiefault*, 160 Wn.2d at 415; *see also Webb*, 183 Wn. App. at 248.

2.      *Webb* was not a significant change in the law

Tennant argues that at the time of his sentencing and direct appeal, the law required a court to consider the elements of the Washington and the out-of-state statutes at the time of the prior crime. Tennant argues that *Webb* changed the law by requiring courts to compare "foreign offense[s] to Washington offenses that would have constituted 'most serious offenses' at the time that the defendant committed the offense for which he is being sentenced." Personal Restraint Pet. (Sept. 9, 2019) at 3. We hold that *Webb* does not reflect a significant change in the law because *Webb* did not overrule prior cases, and *Webb*'s reasoning was available for Tennant to argue when he was sentenced and at the time of his direct appeal.

The holding in *Webb* was consistent with the plain language of the POAA, which provides that a defendant must have been convicted of felonies that under the laws of Washington would be considered most serious offenses. RCW 9.94A.030(38)(a)(i)-(ii).

Moreover, *Webb* did not conflict with prior cases. In *Morley,* the Supreme Court reiterated that the trial court must first assess whether the out-of-state crime was legally and factually comparable to an in-state counterpart crime to determine whether the out-of-state crime could be

included in the offender score. 134 Wn.2d at 605-06. But in that case, there was no dispute that the prior crimes were most serious offenses under the POAA. *Id.* at 607, 613. The court discussed in depth whether the prior offenses could be included in the defendants' offender scores, *id.* at 605-611, but summarily concluded that the prior offenses were comparable to most serious offenses, *id.* at 608, 612, 613-14. Nothing in *Morley* or its progeny required courts to look *only* to the elements of a Washington crime when the prior out-of-state offense was committed to decide if the out-of-state offense was comparable to a most serious offense.

In *Webb,* we addressed a different question than the one discussed at length in *Morley.* Instead of determining whether a prior out-of-state conviction was properly included in Webb's offender score, in *Webb* we addressed whether his prior conviction was a most serious offense under the POAA. 183 Wn. App. at 247-49. The prior conviction was a 1982 Washington conviction for second degree assault. *Id*. at 248. Washington's second degree assault statute changed between 1982 and 2010*,* so we had to determine whether a 1982 second degree assault conviction was legally and factually comparable to a second degree assault conviction in 2010. *Id.* at 247-49. We concluded that the relevant prongs of the 1982 and 2010 definitions of "second degree assault" were not legally comparable, and there was insufficient proof that Webb's conduct was factually comparable. *Id.* at 249. Thus, Webb's 1982 Washington conviction for second degree assault was not a most serious offense for purposes of the POAA. *Id.*

*Webb* did not conflict with cases addressing whether a prior out-of-state conviction was properly part of the offender score and it did not overturn prior precedent as Tennant contends. Nothing prevented Tennant from making the argument he raises now at the time he was sentenced

or on direct appeal. *Webb* was not a significant change in the law and, therefore, this exemption to the PRP time bar does not apply.

C.      Other Time Bar Exemptions

Tennant argues that if this court does not exempt his PRP from the time bar under RCW 10.73.100(6), we should hold that it is exempt under RCW 10.73.100(4) or (5).

Tennant argues that "the evidence introduced by the State . . . to prove that [he was] a persistent offender was insufficient," thus qualifying him for the exemption in RCW 10.73.100(4). Personal Restraint Pet. (Sept. 9, 2019) at 5. But the plain language of RCW 10.73.100(4) shows that it is inapplicable here. That exemption only applies where "the evidence introduced at trial was insufficient to support *the conviction*." RCW 10.73.100(4) (emphasis added). Tennant does not challenge the validity of his conviction.

Tennant provides no analysis as to why he believes the trial court lacked jurisdiction to impose his sentence under RCW 10.73.100(5). Therefore, we need not further address this basis for avoiding the time bar. RAP 16.7(a)(2); *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). Tennant raises no other argument for overcoming the statutory time bar.

No. 53418-5-II

CONCLUSION

Tennant's PRP is untimely,[5] and he has not established that any exemption to the time bar applies. We therefore dismiss Tennant's PRP as time barred.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, J.

Sutton, A.C.J.

---

[5] Tennant's PRP is also successive, but because we dismiss the PRP as time barred, we need not transfer it to the Supreme Court for consideration.